# In the United States Court of Federal Claims

No. 19-629C

(Filed:  September 3, 2021)

```
                                    )
KEVIN LLEWELLYN MCGHEE,             )
                                    )
                 Plaintiff,         )
                                    )
          v.                        )
                                    )
THE UNITED STATES,                  )
                                    )
                 Defendant.         )
                                    )
```

*Kevin L. McGhee*, *pro se*, Florissant, MO.

*Catherine Parnell*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  On the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, *Stephen J. Gillingham*, Assistant Director, and *Sean L. King*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Bernard E. Doyle, Office of General Counsel, National Guard Bureau, Arlington, VA.

## OPINION AND ORDER

**SOLOMSON**, **Judge.**

In this military pay case, Plaintiff, Kevin Llewellyn McGhee, a medically retired United States Army Lieutenant Colonel who served as a dual-status military technician and chaplain with the Missouri Army National Guard ("MOANG")[1] filed a complaint, on April 19, 2019, against Defendant, the United States.[2]  ECF No. 1 ("Compl.") at 1.

---

[1] "'[D]ual-status' technicians occupy a unique space between federal/state organizations and civilian/military status.  Dual-status technicians work in a variety of roles with National Guards but are designated employees of the U.S. Army or Air Force.  Even though dual-status technicians are federal employees, authority over dual-status technicians, including all hiring and firing decisions, remains with the National Guard at the state level." *Dyer v. Dep't of the Air Force*, 971 F.3d 1377, 1380 (Fed. Cir. 2020) (internal citations omitted) (citing 32 U.S.C. § 709).

[2] This case originally was assigned to Judge Wheeler, ECF No. 2, but was transferred on February 5, 2020, to the undersigned Judge.  ECF Nos. 8, 9.

In his complaint, Mr. McGhee alleges that MOANG improperly failed to pay him incapacitation pay pursuant to 37 U.S.C. § 204, for twenty-one months, starting May 4, 2013, until January 20, 2015, when he was medically retired from service.[3] Compl. at 2.  Mr. McGhee seeks $230,837.04 in incapacitation pay.  *Id.* at 2-3.

Prior to filing a complaint in this Court, Mr. McGhee initially filed a claim, in January 2017, for incapacitation pay with the Army Board for Correction of Military Records ("ABCMR").  ECF No. 1-2 at 3.  Before the ABCMR rendered a decision, however, Mr. McGhee filed his complaint in this Court.  *Id.*  On June 28, 2019,the government filed an unopposed motion to remand this case to the ABCMR and to stay the proceedings of this case until the ABCMR issued a decision.  ECF No. 5 at 1.  This Court granted the government's motion for a voluntary remand.  ECF No. 6.

Despite consenting to the government's June 28, 2019 request, Mr. McGhee, on April 1, 2020, filed a motion to transfer or reassign this matter, alleging bias on the part of the Court for granting the government's motion to stay.  ECF No. 14.  On April 27, 2020, the government filed a status report, indicating that, on April 13, 2020, ABCMR had reached a decision in Mr. McGhee's case and granted partial relief on his claims.  ECF No. 15 at 1.  The status report also explained, however, that the "[g]overnment and ABCMR believe[d] it necessary for the remand to continue for another sixty days, until June 26, 2020," to address the concerns that Mr. McGhee had raised after the ABCMR's April 13, 2020 decision.  *Id.*  Mr. McGhee agreed with this course of action.  *See id.* at 2.  The Court rejected Mr. McGhee's bias claim, denied his motion to transfer this case, and once again stayed and remanded the instant matter pending a final ABCMR decision.  ECF No. 16 at 2-3.

On June 22, 2020, ABCMR rendered yet another decision, again recommending partial relief on Mr. McGhee's incapacitation pay claim.  *See* ECF No. 17; AR[4] 42-43.  This time, however, ABCMR increased its recommended payment from November 9, 2013 to January 20, 2015 (*i.e.*, for a total of 14 months and 11 days), instead of only from February 2014 to January 2015.  *Compare* ECF No. 15 and AR 578, *with* ECF No. 17 and AR 42-43.  ABCMR concluded that the earliest date Mr. McGhee had applied for incapacitation pay was November 9, 2013, and consequently established that date as the beginning of his entitlement to incapacitation pay.  AR 42.  Mr. McGhee maintains that

---

[3] Plaintiff also cites Army Regulation 135-381 (Incapacitation of Reserve Component Soldiers) and Department of Defense Instruction 1241.2 (Reserve Component Incapacitation System Management), but these regulations merely implement 37 U.S.C. § 204 and do not serve as an independent basis for compensation beyond whatever the statute provides.

[4] Citations to the administrative record (ECF No. 21-1) are denoted as "AR."

he is entitled to an additional six months and four days beyond the partial relief of 14 months and 11 days that ABCMR previously granted him.  AR 230.

Since the filing of the original complaint in this case, Mr. McGhee has expanded his claims at ABCMR and before this Court.[5]  *See* AR 500-12; ECF No. 18 at 2.  In total, he now claims that he is entitled to compensation for: (1) incapacitation pay from May 4, 2013 to November 8, 2013 pursuant to the Military Pay Act, specifically 37 U.S.C. § 204; (2) discrimination pursuant to Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335; (3) disability retirement pay annuity under the Federal Employees' Retirement System ("FERS"), 5 U.S.C. § 8451; and (4) federal and military whistleblower retaliation pursuant to provisions of the Whistleblower Protection Act, 5 U.S.C. § 2302, and the Military Whistleblower Protection Act, 10 U.S.C. § 1034.  ECF No. 18 at 2.  He now seeks $5,000,000 as a result of these additional claims.  *Id.*

On February 15, 2021, the government filed a motion to dismiss Mr. McGhee's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and, in the alternative, a motion for judgment on the administrative record.  ECF No. 20.  On March 15, 2021, Mr. McGhee filed a response to the government's motions and a cross-motion for judgment on the administrative record.  ECF No. 22.  The parties filed their respective response briefs.  ECF Nos. 23, 26.

For the reasons explained below, the Court **GRANTS** the government's motion to dismiss for lack of subject matter jurisdiction and **DENIES as MOOT** the government's motion for judgment on the administrative record and Mr. McGhee's cross-motion for judgment on the administrative record.

Mr. McGhee is proceeding *pro se*, and this Court generally holds a *pro se* plaintiff's pleadings to "less stringent standards."  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *see also Troutman v. United States*, 51 Fed. Cl. 527, 531 (2002).  The Court, however, "may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."  *Kelley v. Sec'y of Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).  In short, "even *pro se* plaintiffs must persuade the court that jurisdictional requirements have been met."  *Hale v. United States*, 143 Fed. Cl. 180, 184

---

[5] Mr. McGhee attempted to file an amended complaint in August 2020, which the Court rejected as untimely.  In any event, his proposed amended complaint raises the same four primary claims that the ABCMR addressed in its decision and that Mr. McGhee represented in the parties' August 24, 2020 joint status report.  ECF Nos. 18, 20.  In the government's motions, it addresses all of Mr. McGhee's claims.  ECF No. 20 at 4 n.4.

(2019).  In the absence of subject-matter jurisdiction, the Court must dismiss the claim. *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012).

Generally, "[t]he jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009).  The Tucker Act, 28 U.S.C. § 1491(a)(1), provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).  The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).  Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983).  With respect to "money-mandating" claims, the plaintiff must identify a law that "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 217 (internal citations omitted).  For the reasons explained below, Mr. McGhee's four claims are not within this Court's subject-matter jurisdiction.

*First*, in making his primary incapacitation pay claim, Mr. McGhee relies upon two subsections of the Military Pay Act – neither of which are money-mandating.  The first subsection on which Mr. McGhee relies, 37 U.S.C. § 204(g)(1)(A), provides the following:

> A member of a reserve component of a uniformed service is entitled to the pay and allowances provided by law or regulation for a member of a regular component of a uniformed service of corresponding grade and length of service whenever such member is physically disabled as the result of an injury, illness, or disease incurred or aggravated . . . in line of duty while performing active duty[.]

The second subsection on which Mr. McGhee relies, 37 U.S.C. § 204(h)(1)(A), provides:

> A member of a reserve component of a uniformed service who is physically able to perform his military duties, is entitled, upon request, to a portion of the monthly pay and allowances provided by law or regulation for a member of a regular component of a uniformed service of corresponding grade and length of service for each month for which the

> member demonstrates a loss of earned income from nonmilitary employment or self-employment as a result of an injury, illness, or disease incurred or aggravated . . . in line of duty while performing active duty[.]

Notably, section 204(i)(2) provides the Secretary with discretion regarding any pay award for more than six months made pursuant to sections (g) or (h). 37 U.S.C. § 204(i)(2) ("Pay and allowances may not be paid under subsection (g) or (h) for a period of more than six months. The Secretary concerned may extend such period in any case if the Secretary determines that it is in the interests of fairness and equity to do so.").

While Mr. McGhee claims that, based on the Military Pay Act, he is entitled to additional incapacitation pay beyond the 14 months and 11 days that ABCMR awarded him , *see* ECF No. 22, the Federal Circuit has expressly held that a statute governing incapacitation pay is not money-mandating because it provides the government with plenary discretion to determine an individual's eligibility for more than six months of incapacitation pay. *Barnick v. United States*, 591 F.3d 1372, 1378 (Fed. Cir. 2010) ("Any additional incapacitation pay under 37 U.S.C. § 204(g) is wholly at the discretion of the Air Force, and courts lack jurisdiction over such a claim[.]"). Because Mr. McGhee seeks incapacitation pay for a period greater than six months, his Military Pay Act claim, based, as it is, upon 37 U.S.C. § 204 (g)-(h), is not a money mandating claim and, thus, is not within this Court's jurisdiction.[6]

---

[6] In Mr. McGhee's response to the government's motion to dismiss, but not in his complaint, he alleges that on September 24, 2016, the MOANG Equal Opportunity Officer purportedly told him that MOANG would submit a correct incapacitation pay packet for the full twenty-one months of incapacitation pay but that MOANG never filed a request for more than the original six months of incapacitation pay. ECF No. 22 at 10-11. To the extent that Mr. McGhee's assertions, generously characterized, may be viewed as an equitable estoppel claim, it must fail. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990). Indeed, as the Federal Circuit has held, "[w]hat the *Richmond* Court left for another day is whether estoppel can lie against the Government in a case not involving payment from the Treasury, *i.e.*, claims for other than monetary relief." *Perez v. United States*, 156 F.3d 1366, 1373 (Fed. Cir. 1998). Whatever opening the Federal Circuit may have left for such claims, equitable estoppel cannot be used to create a money mandating claim where none exists. Moreover, even "[a]ssuming for the sake of argument that . . . *Richmond* . . . leaves open a 'crack in the door' through which an estoppel argument might pass, . . . [plaintiff] has failed to make the threshold showing of reasonable reliance as required by *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947)." *Belanger v. Office of Pers. Mgmt.*, 1 F.3d 1223, 1228 (Fed. Cir. 1993) (quoting *Brush v. Office of Pers. Mgmt.*, 982 F.2d 1554, 1558 n. 11 (Fed. Cir. 1992)); *see also Brenes v. United States*, 152 Fed. Cl. 365, 372 n.7 (2021) ("[T]he Court is unaware of a case in which a plaintiff

Mr. McGhee fails to distinguish the instant case from *Barnick*, 591 F.3d at 1377, which is binding on this Court.  In an attempt to demonstrate that 37 U.S.C. § 204 is a money-mandating statute, Mr. McGhee cites to *Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005).  ECF No. 22 at 6 n.7.  While Mr. McGhee is correct that the Federal Circuit in *Chambers* refers to 37 U.S.C. § 204 as a money-mandating statute, that decision does not separately analyze the different subsections of the statute.  *Chambers*, 417 F.3d at 1224.  The *Barnick* decision, in contrast, specifically addresses how and why 37 U.S.C. § 204(i)(2) renders 37 U.S.C. § 204(g)(1)(A) and 37 U.S.C.§ 204(h)(1)(A) not money-mandating.  *Barnick*, 591 F.3d at 1378.  For instance, the court in *Barnick* explained:

> However, "[a] statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group."  Here, because § 204 incapacitation pay beyond the initial six-month period is wholly within the Secretary's discretion under § 204(i)(2), the Court of Federal Claims and this court lack subject matter jurisdiction over [the] claim for additional incapacitation pay.

*Id.* (internal citation omitted) (quoting *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006)).  Mr. McGhee fails to distinguish – or even address – *Barnick*'s holding.

*Second*, Mr. McGhee's discrimination claim under USERRA is outside of this Court's jurisdiction.  Pursuant to USERRA, if the veteran's employer is a federal agency, jurisdiction lies exclusively with the United States Merit Systems Protection Board, 38 U.S.C. § 4324(c)(1), whereas claims against a state employer "may be brought in a State court of competent jurisdiction in accordance with the laws of the State."  38 U.S.C. § 4323(b)(2); *see Dziekonski v. United States*, 120 Fed. Cl. 806, 810 (2015) (holding that "plaintiff's citation to the USERRA fails to establish jurisdiction in this Court").  Moreover, USERRA specifically provides that "[i]n the case of a National Guard technician employed under section 709 of title 32, the term 'employer' means the adjutant general of the State in which the technician is employed."  38 U.S.C. § 4303(4)(B); *see* 20 C.F.R. § 1002.306 (providing that "[a] National Guard civilian technician is considered a State employee for USERRA purposes, although he or she is considered a Federal employee for most other purposes"); *see also Stoglin v. Merit Sys. Prot. Bd.*, 640 F. App'x 864, 867-68 (Fed. Cir. 2016) (holding that National Guard technician must seek relief of USERRA claim in state court).  Because Mr. McGhee is a dual status technician with MOANG pursuant to 32 U.S.C. § 709, the correct forum for

---

successfully has relied upon an estoppel theory to recover money.")

his USERRA claim is in Missouri state court, not this Court.  In any event, this Court lacks jurisdiction over a USERRA claim.

*Third*, this Court has no jurisdiction over Mr. McGhee's FERS claim because '[b]y statute, the authority to decide a FERS application in the first instance and adjudicate all claims arising under that retirement system rests with [the Office of Personnel Management]." *Stekelman v. United States*, 752 F. App'x 1008, 1010 (Fed. Cir. 2018) (citing 5 U.S.C. § 8461(c)).  Moreover, the "jurisdiction to review any potential miscalculation by OPM lies with the MSPB, and not the Court of Federal Claims*." See id.* at 1011 (citing 5 U.S.C. § 8461(e)(1) and *Miller v. Office of Pers. Mgmt*, 449 F.3d 1374, 1377 (Fed. Cir. 2006)).

*Fourth*, Mr. McGhee's whistleblower claim, whether pursuant to the Whistleblower Protection Act, 5 U.S.C. § 2302,[7] or the Military Whistleblower Protection Act, 10 U.S.C. § 1034, is outside of the subject-matter jurisdiction of this Court.  The Whistleblower Protection Act "is a statute designed to forbid agencies from engaging in certain prohibited personnel practices, 'including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers.'" *Burch v. United States*, 99 Fed. Cl. 377, 382 (2011) (quoting *United States v. Fausto*, 484 U.S. 439, 446 (1988)).  But this statute is not money mandating as it "in no manner mentions compensation or any right to recovery for damage sustained and, hence, the statute fails to express, either directly or by implication, that a party has a right to compensation for any damage sustained.".  *Black v. United States*, 56 Fed. Cl. 19, 23 (2003) Likewise, , the Military Whistleblower Protection Act only "provides for a comprehensive administrative review scheme over claims of retaliation—specifically, the correction of military records and disciplinary actions as remedies for prohibited actions—*but no private right of action for money damages, which could be enforced in the Court of Federal Claims*." *Bias v. United States*, 722 F. App'x 1009, 1014 (Fed. Cir. 2018) (emphasis added); *see also Rana v. United States*, 664 F. App'x 943, 948 (Fed. Cir. 2016) (same).

In sum, while Mr. McGhee received substantial relief from the ABCMR, this Court lacks subject-matter jurisdiction over all four of Mr. McGhee's remaining claims.

## CONCLUSION

The government's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction is **GRANTED**.  The government's motion for judgment on

---

[7] The Whistleblower Protection Act of 1989, Pub. L. No. 101–12, 103 Stat. 16, has been codified in various sections of Title 5 of the United States Code.  *See Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1344 (Fed. Cir. 2001) (citing the Whistleblower Protection Act as "Pub. L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.)").

the administrative record and Mr. McGhee's cross-motion for judgment on the administrative record are **DENIED** as **MOOT**.  The Clerk shall **DISMISS** Mr. McGhee's complaint.

       **IT IS SO ORDERED.**

<u>s/Matthew H. Solomson</u>
Matthew H. Solomson
Judge
